Good morning. Good morning. My name is Scott Walpert. May it please the Court, I represent the Central Bucks School District. And, Your Honor, if I may, I'd like to reserve three minutes for rebuttal. Mr. Grant. Your Honor, the issue in this case is whether the IDA two-year statute of limitations should apply to a due process complaint that was filed after the IDA 2004 amendments occurred. And by way of the date, the date of that was July 1st, 2005. That's when that new statute and the new statute of limitations became effective. The statute itself was enacted into law on December 3rd, 2004. And there was a seven-month window, Your Honor, during that period before the actual statute took effect. And as Your Honors are aware, we did a reply brief, or actually a letter brief, about two weeks ago on three cases. There is substantial dispute among the Eastern District in regard to the issue that's before the Court. And quite honestly, when you look at the themes and the points of consideration in the analysis, I think there's some key concepts which I want to highlight for the Court today. The first concept is reasonable opportunity to bring a claim. And it's our position, Your Honors, that in this case, the petitioner, the plaintiff, and the underlying action, the student, who's no longer a student, by the way, he's about 24 years old, he graduated from the Central Bucks School District back in June of 2005, and he is not a student. But at that point during the time frame at issue, and the time frame at issue here, they want to go back to 1997. The student was in fifth grade at that time, so really the time period at issue would be between fifth grade and twelfth grade. And it is our contention that the student had a reasonable opportunity at various points to bring a due process claim, a due process complaint, and did not do so. And if we focus first on the period between December when the law was enacted, December of 2004, and July 1, 2005, again, that's a seven-month window in which there was that opportunity to bring a claim and not have this issue of the two-year statute of limitations being applicable. Why should that be good enough? I mean, in Vernon, there was a specific notice from the EEOC about this is what's going to happen to you if you don't file. In this instance, there's a change in law, there's seven months, there's no indication that people knew about this. Why is it good enough? Well, I think in some ways, Your Honor, it's actually stronger than Vernon because in Vernon, they filed the underlying EEOC complaints, and it was after that fact that there was a change, and then there was the notice that was issued. And in Vernon, there was actually a misrepresentation of the notice at one point. So there was one piece of information saying you have to file within the 90 days of the issuance of the right to sue letter, and there was some misinformation about stating the old law was still applicable. In our case, there was ample public notice as far as the issue of the enactment of the IDA 2004. And then based on the fact there were changes, and it wasn't just statute of limitations changes, there were many substantive changes to the statute, Congress left a seven-month period for consideration and for action to be taken. So I think that there's a... What about the provision referred to at the very end of your opponent's letter in response to the court's inquiry about Section 1415 D2E1, the procedural safeguards notice must inform the parent of the time period in which to make a complaint. Should there have been some notice when the statute changed that should go out under that provision saying you have to make the complaint within the seven months or it will be lost? Well, should there have been? That's an issue, Your Honor. There was not in this case. Is that a positive? They say it's an affirmative. They say this is an affirmative defense, and you are obligated to do that. And having not done that, you can't rely on this. Well, actually, I would suggest we are not obligated to do that. During the timeframe up to July 1, 2005, there was no statute of limitations under the IDA. In Pennsylvania, arguably, there was a one-year statute of limitations under a case called Montour, a state case. So during the timeframe at issue, there was not that period. There was not that notice requirement of giving notice that there was a statute because there wasn't a statute. So what you're saying is that you shouldn't have to give notice of the statute because you guys didn't know about it, but they should be held to the statute whether they know about it or not? No, actually, I'm not saying that, Your Honor. I'm saying that during the timeframe at issue, December through July, there was that notice period for both sides, and there was a form procedural safeguards notice that is issued and is required to be disseminated. That is the document that was disseminated by the school district. It's the same as now after the change in the law. There was a form procedural safeguards notice that's disseminated. Let me make sure I get the facts right. Sure. You're saying you sent them a notice. It was a notice that was based on the old law and that that's good enough to satisfy your obligation, but that they should be held to account for the statute of limitations that exists under the new law. Is that right? Well, I'm saying the notice that was sent before did not address the statute of limitations issue because there was not a statute of limitations before. So unlike the case, the Vernon case that you brought up, Your Honor, this is not a situation where there's any misrepresentation by the district as to what statute of limitation is in effect. It's simply the fact that there is a statute of limitations after the change in the law. Both sides have an obligation to be aware of that. Have I got the facts right? You send a notice, which is supposed to give them, they say, are they correct? Let me start with this. Are they correct as a matter of law that the IDA requires you to inform them in plain and understandable terms of the time within which to bring an action? Yes, Your Honor. Okay. And you did that. When does that require it and when did you do that? Well, we did that after July 1st of 2005, after the change to the law occurred. So in this particular case, keep in mind the way this played out, the due process complaint was filed much after the fact. It was filed in May of 2007. And that is after the student graduated from high school, about two years after. Did the notice you send say you've got two years to do this? The notice did not say that because this student graduated prior to the time frame at issue. And I think that's a key factor, Your Honor. We were issuing the notice that was required to be issued under the law at the time. There was a change in the law that was the way this plays out procedurally. It was after the fact. I don't know. I don't know, but I'm confused. I'm not sure if I'm getting it. I'm just trying to find out as a matter of fact. Did the notice you send them say, hey, there's a two-year statute of limitations now? Sometimes when you're answering that, I hear you saying, we didn't say that because that new statute wasn't in effect. And then other times I'm not so sure. Did the notice you send them inform them of the statute of limitations to which you were saying they should be held to account? It did not. It did not say there was a new statute of limitations. All right. So, in reality, what you're saying is we sent you notice, it didn't tell you about the statute of limitations, but you should be held to account of it in spite of what we told you. Is that right? Well, because my point is, Your Honor, there was not misrepresentation as far as what the statute is. But don't you see there's a bit of an irony here in saying there was an ample notice to them, they should be held to account for it, but we shouldn't have been held to account to give them the notice that the statute tells us we have to give? I understand because of the way this occurred, with the timing of the statute being enacted and the fact that the due process complaint was filed much after, there is that issue. Is this notice in the record? Your Honor, actually, there is a reference to the notices in various documents in which the form documents under the IDA that are issued reference a procedural safeguards that was issued at various points dating back. The record actually has documents that precede it in the time frame we're talking about. So the notice itself is not in the record, but there's no evidence in the record that this notice, as Your Honor asked, that identified the two-year statute of limitations. When is the obligation, when do you have to give this notice? When you first learn of a claim? It's in regard to the existing, what the law is at the time, Your Honor, and in this case, because the law changed. No, no, no. When are you obligated to give it? When does it trigger and the school district goes, ah, we've got to send out this notice? Understood. We're actually obligated to give it at various points. For instance, if there is an issuance of a permission to evaluate a student, a permission to reevaluate a student, we give the notice out when there is an IEP meeting and other kind of operative time frames during the educational process. So you may have given several notices along the way saying there is no time frame, or you? We, I'm sure that several notices were given during the, we're dating back to 1997, Your Honor, so certainly multiple notices were given. Saying time frame, colon, there is no time frame. Not identifying that there was a time frame because of the status of the law at that point. I mean, that's what the law was at that time frame. So we're in a position, Your Honor, where we assert that there was still a reasonable opportunity. There was still a seven-month period in which if they wanted to bring an action, they could have brought an action, and when you look at this case. Is it your position that, you know, the law is what it is, and once the law has changed, everyone is, quote, unquote, put on notice, and that there is not an affirmative duty on the part of the school district to do anything, but if the law changes, people should be aware that the law has changed? Number one, Your Honor, people should be aware on both sides the law has changed. Number two, there is an affirmative duty. We believe that affirmative duty was triggered based on the actual effective date of the law, which was July 1, 2005. I'm sorry, affirmative duty? To give notice after the effective date of the law. The change was effective as of July 1, 2005. Now, keep in mind, the student had graduated by that point, so there were no IEP meetings after that point. There were no further permission to evaluate, re-evaluate. This was a situation where the student was. Wait, wait, wait. When you're saying affirmative duty, you mean that giving 14-15 its due as of July 1, 2005, if you were giving a notice to someone, it would have been one that said two-year statute? Yes, Your Honor. And you would have done that at their IEP or something like that? Exactly. Had that occurred, again, because of the way it played out, that did not occur. So there was no notice given. And my point in regard to your Judge Jordan's question was you brought up the Vernon case. In the Vernon case, there was actually some misinformation. There is not evidence in this record there was misinformation. And based on that fact, we still have a seven-month period in which the law was changed. It was enacted. There was that seven-month window. No action was taken during that time frame. And if we go beyond, I'm still focusing on the ability to bring a claim. If we go beyond that time frame backward, Your Honors, they want to go back to 1997. So there was an opportunity, obviously, in fifth grade and sixth grade, so on, up until 2005 when this student graduated to bring a claim. And they did not do that. One of the issues we did litigate, we didn't get into the merits in this case, but one of the issues we did litigate was the applicability of the statute of limitations exceptions here. And under IDA 2004, it's a newer, should-have-known standard with two exceptions, one of which would have to be met to pierce, and effectively it would be withholding of information by the district, information that otherwise would have to be provided, or misrepresentations by the district, and that's been interpreted to be something really intentional or material misrepresentations. And both at the hearing officer stage and at the appeals panel stage, the contention by the plaintiffs, by the student, that there were one of those exceptions met was rejected. So we're in a situation where that fact alone demonstrates that they could have brought the claims in 97 and 98 and so on up until 2005 and did not, meaning they had knowledge of the basis for their claim that this student purportedly was struggling, was not receiving a free appropriate public education, yet took no action. Did they at any point make the argument before the hearing officer or the appeals panel or the district court that you could not rely on the statute of limitations because you had not fulfilled your obligation under section 1415D2? Or has that shown up for the first time in the last paragraph of the letter in response to our request? Your Honor, I don't believe that was an issue that was actually pursued. I don't believe that was argued. We did get into factually. There may have been some cross-examination. I would have to look back in the record. Did the procedural safeguards, was it sent? That kind of thing. But it wasn't argued to the district court? I don't believe it was, Your Honor. So we're in a situation now where, again, we have that window of time frame for action to be taken. We believe no action was taken. And then we go further. If we go to kind of the front end, you have a period of time after July 1, 2005, up until when this was actually pursued, which was May of 2005. I'm sorry, 2007. And, you know, another period of time, long after this student had graduated. So we believe there was a reasonable opportunity both before, during, and after to bring a claim, and no claim was brought. And once again, I just want to emphasize there was not a misrepresentation here by the district as far as what the obligations were. It's incumbent on both sides to be aware of obligations. And we believe we complied with that. All right. We'll hear from you on Ribbon. Thank you, Your Honor. Thank you. May it please the Court. Good morning, Your Honors. I'm Gabrielle Cerini, and I represent Stephen I. and his parents in this action. To give you a little bit of context in this case, Stephen is a 23-year-old. He's not 24. He's a 23-year-old student who, at the time of his graduation from the Central Bucks High School, could not fill out a job application. At 23 years old, he is currently unemployed because he needs to learn how to read and write at a level that will allow him to be able to be engaged in competitive employment. He's not at that level now, which is the reason that we're seeking compensatory education services so that he can get the remedial reading and writing services that he needs. Ms. Cerini, did you make or somebody on Stephen I.'s behalf make the affirmative defense argument to the district court that's been made in the supplemental letter to this court? Your Honor, I believe it was made. I was not the attorney who handled the hearing. We're talking about the district court. Oh, in the district court. District court. I don't believe so, Your Honor. The reason that we actually brought up Section 1415 was in response to the court's offer of the three cases which we were required to letter brief because I think that, very astutely, the courts recognized that the issue here in this case is really one of notice and whether notice was given to these particular plaintiffs and also, in general, whether notice was given by the IDEA that the statute would be applied retroactively to extinguish existing claims. And I respectfully submit that notice was not given in this case and not sufficiently given to the community in general. What obligation does an entity have, school district, whomever, when there is a change in a statute of limitations that could affect people who may have claims against them what obligation does an entity in that position have to give notice? I think they have every obligation to give notice. And I think the reason... What case or principle would support that? Well, my principle, the principle that would support it would be Mr. Wolpert's logic and, you know, the defendant's argument in this case. I mean, on the one hand, the school district is very vigorously asserting that the seven-month period between the passage of the IDEA 2005 and the effective date, which was July 1, 2005, was somehow magically sufficient to inform every potential plaintiff in... What makes it insufficient? Why would it be magically insufficient? Because how were parents to know about it? In fact, in the record, the parent in this case testified that she had no idea that there had been a change in the statute because the district never informed them. Well, but she had the claims since 1997. She had the claims, but the question was... She had the claims, and you need to be vigilant about your rights and be knowledgeable about what laws impact your rights. Why isn't it the burden of the plaintiff in a situation like that to become aware of their rights? Because the right was that there was no statute of limitation. The right was that there was no need to bring a claim. There was a statute of limitation for more than two years before this claim was brought, right? You mean the Montour case? I mean... Oh, I'm sorry, Your Honor. From July 1, 2005... To when the claim was being pressed against the school district before the hearing officer was over two years, right? Yes, we're not disputing that the statute of the time limitation went into effect July 1, 2005. However, the parents were never notified. So why is it unfair? Well, that takes us back, I guess, to Judge Rendell's question. What do you point to? What law do you point to? What statute? What do you point to to say that it's the obligation of the school district to do, I don't know, a mass email or something to parents to say, hey, there's a change in the law? Beyond the obligation every citizen has to be aware of the law and to safeguard their rights. Well, again, I think the seven-month period during which the school district knew and is expecting the parents to know about the change was more than sufficient for the school district to say, in our procedural safeguards notice in the months coming up to July 1, 2005, we should inform parents that there's going to be a time limitation, which they didn't do. The IDEA is a very unique statute. It's different from the ADEA. It's different from immigration statutes. I'm not aware of another statute, in fact, that is so replete with requirements on a potential defendant to notify potential plaintiffs of that defendant's responsibilities and potential liabilities under the statute, beginning with child find. I mean, it has been as long as the IDEA has been in effect. So are you saying it's implicit, Ms. Serena? Are you saying that there's something implicit in IDEA that means that the school district is obligated to inform parents when there's a change in the statute of limitations? Yes, I think it's implicit. I think it's entirely consistent. And I think it's fair. And, of course, fairness, as the Supreme Court has counseled in both Landgraf and St. Cyr, is an essential component to any retroactivity analysis. Does that mean that you would take that same position with regard to any change in the IDEA or IDEA now, that you would put the obligation on the district to inform all parents nationwide of any change in the statute? Absolutely. And, in fact, that's not just my invention. That's what the IDEA requires. When the amended act was passed in December 2004, in that passage, the law at that time, even though it hadn't become effective yet, the district was on notice of it and expected parents to be on notice of it. It included a new section, a new and improved section, of what the procedural safeguards notice that the school district is required to give to the parents has to include. And, of course, your client was already out of the school district. Was already out of the school district, but not during the seven-month period. My client was still in the district in December of 2004, when the act was passed, when the school district first became aware of what the new procedural safeguards requirements were. Are you saying now that there was a specific juncture during that time period where the procedural safeguard notice had to have been given to your client by law that wasn't given? I don't know that that is not part of the record. However, what I can assert with confidence to the court is that procedural safeguards notices are required to be sent by school districts to families with virtually every action that the school district takes. There was nothing prompting there, right? Anytime there's going to be actions going on. With an IEP meeting, for example, and IEP meetings are required to be conducted each school year. Patricia, we're trying to, I think, bring it back to the facts here. The facts here. There was nothing happening in the life of your client that would have prompted or should have prompted the school district to send a procedural safeguard notice. Was there? Yes. Between December 3, 2004 and July 1, 2005? Absolutely. He would have had an IEP. There is a yearly IEP that is required by law. Where is that in the record? Maybe that was November of 2004. We don't know that. Well, and he certainly would also have been exited from special education and was in this case, which needs to be done by means of a document called a NOREP, a Notice of Recommended Educational Placement, which would have occurred at the end of the school year, and he was NOREPed out of special education. Who knows when that was? Well, we don't have any of this in the record. It is in the record that he graduated in June of 2005. I know, but we don't have in the record that there was something after the law was passed, i.e., December 3, 2004, that there was a point at which the school district violated a responsibility to advise of the two-year statute. We know that they didn't advise of the two-year statute. We don't know that there was an obligation they had to. But the supervisor testified, and this is in the record, and it's actually in the transcript on page 322, that the parents were never informed that the IDEA was being amended and contained a limitations period. In that testimony, she also admitted that procedural safeguards were given out during that school year. And the parent testified as well on page 3. Doesn't this amount to an argument, Ms. Cerini, that they can't rely on this because they defaulted on their obligations as a school district? And if that is the argument that you're relying on, how can we hear that for the first time on appeal when that was not anything that was ever addressed to the district court? I think that's only part of the argument. We have always taken the position that the parents didn't have notice of the statute of limitations because the new statute, the amended statute, is absolutely silent as to any retroactive intent. And our argument has been and continues to be and really is the forefront of our position here, which Judge Padova accepted, that in the absence of an expression of clear retroactive intent by Congress, it can't be assumed. But Sincere and Landgraf are different. We're not applying the substantive provisions of the IDEA that were amended. We're not applying those to the past conduct of your client. And that's where the difference is. This is not a substantive provision. This is a statute of limitations. It has a secondary, not a primary, application. Respectfully, I can't agree with that. Certainly, you know, that would be the school district's position. However, the only court that I'm aware of to ever actually address the issue of the procedural versus substantive nature of the statute of limitations, the new statute of limitations under the IDEA, was Judge Young in Terrence D. And he determined that this was not a procedural. Well, the problem is it doesn't fall on just procedural substantive lines. Exactly. Judge Schiller made an opposite finding. That's correct, Your Honor. Can I ask you to respond to something Judge Schiller said? Sure. He posed a hypothetical in the Evan H. v. Unionville-Chads Ford School District case where he said, it can't possibly be that this is to be viewed as impermissibly retroactive. Because if we accepted the view that was being pressed on us by the plaintiff in that case, the result would be that you'd have a period of time before the change in the statute of limitations as to which you could make any claim at all. And then you'd have a gap. And then you'd have a period of time after notice was given where there couldn't be any claim. So you'd have this sort of a donut-shaped claims opportunity. So I think his words were bizarre. Bizarre. Bizarre is to be beyond the comprehension that Congress would intend that. What's your response to his analysis on that? Well, my response, and I have a lot of respect for Judge Schiller, and that was actually a case also that I handled. But I think that Judge Schiller possibly exaggerated the potential effects of sort of this floodgates of plaintiffs who were going to be bringing these gap litigation. For one thing, it's true that there would be in some cases, as in certain cases, a gap between two periods of time of litigation. However, I don't think it's impossible that Congress could have envisioned that. In fact, I actually give Congress a little more credit than that. And I think Congress did recognize the fact that there is a difference between claims that were going to be brought from July 1, 2005 on and claims that were still existing from July 1, 2005 before. And this is why, because Congress said nothing, was absolutely silent about, well, anything that was before July 1, 2005 is now extinguished. It did say that, but was very careful. Doesn't that assume where you have to get in the end? I mean, you use the language of retroactivity, and Judge Padova does too. You persuaded Judge Padova, a very able judge, and Judge Yawn was persuaded. But there is a whole line of cases that talks about statute of limitations and says they're not retroactive because it isn't the defendant's conduct that's at issue. The statute of limitation goes to the plaintiff's conduct and what the plaintiff chooses to do, and that's prospective behavior. So retroactivity doesn't even get into the mix. Without going into, well, go ahead. Can you respond to that? And those cases largely found that there was a diminished right to rely on a statute of limitations because it is a procedural rule as opposed to a substantive right, and we don't agree with that. And again, in Terrence D., Judge Yawn also said this was not a procedural issue, and he also noted that there was a consensus among the circuit courts, the Ninth Circuit, the Fourth Circuit, and the Fifth Circuit, all saying that statutes of limitations are not procedural, and particularly under the IDEA where the time limitation is so sort of interwoven and enmeshed with the substantive claims of the child. I think it's important for us to keep in mind that it's not an automatic, inflexible, two-year statute of limitations. There are three provisions in the statute that are somewhat confusing, a little complicated, but they all require the fact finder to absolutely delve into the substantive claims of the child in order to determine what the proper period of adjudication should be. So is it your position that OCHOA is not good law anymore? That OCHOA is not? OCHOA. Because the argument you seem to be making is that Congress couldn't, well, without saying explicitly something about retroactivity, it can't make a change in a statute of limitations because by definition, the way you're describing it, every statute of limitations is substantive because there are some rights that are going to go away. That's how you seem to be arguing, that some rights that otherwise would have been available to the plaintiff go away. Anytime there's a change in a statute of limitations, you have affected substantive rights, and therefore every time Congress changes a statute of limitations, it must address retroactivity. Isn't that where the logic of your argument takes you? Well, no, because that wouldn't be consistent with what St. Cyr and Landgraf say, which specifically talk about congressional intent, the expression of congressional intent. Those were not statute of limitations cases. Pardon me? Those were not cases involving issues of statutes of limitations. That's true. But they also did not limit themselves to cases that were not statute of limitations. And I think that the reasoning behind them, particularly the emphasis on fundamental fairness, the elements of fair notice, reasonable reliance, settled expectations, which went into the retroactivity analysis, are very, very applicable to this case. But answer my question, if you would. Is the logic of your argument that anytime there's a change in a statute of limitations, it is having a retroactive effect, and therefore Congress has to speak specifically to retroactivity? I don't think the question is whether the statute is having a retroactive effect. I think the statute is the question is whether the statute is having an impermissible retroactive effect, because clearly Congress has. Okay. Well, obviously if it is reducing the statute, the time limit, then you would say it's an impermissible retroactive effect. And what Landgraf and St. Cyr say is when there is not an unambiguous expression of the intent for retroactivity, the court needs to then move to a second prong of the analysis and look to whether the new limitation would have an impermissible retroactive effect of impairing rights that the claimant had prior to the amendment, attaching new legal consequences to the decision not to, in this case, request due process earlier, which is what Judge ---- Go ahead. I'm sorry. I was going to say, why is not Congress's statement in the amended act in December of 2004 that prevented this provision from going into effect for seven months? Why is that not a sufficient statement that, yo, you know, if you have a claim, you better bring it within the next seven months? Because that's not what it said. It didn't say that at all. It was simply there was a date for the passage of the statute, and then there was a date by which the statute would become effective. No, there were certain provisions, the effect of which was delayed, and the statute of limitations was one of them. Okay. Here's language from Wilson versus Isminger. I'm not sure I say that last name, but it says ---- Nobody's alive to tell us. Yeah. It is essential that such statutes, meaning statute of limitations, allow a reasonable time after they take effect for the commencement of suits upon existing causes of actions, though what shall be considered a reasonable time must be settled by the judgment of the legislature. So based on what Judge Rendell said, why would we second-guess what the Congress evidently thought was a reasonable time when the Congress decided, okay, seven months? Seven months to what? Seven months until there will be a two-year statute of limitations applied to future claims. You could have brought 30 years' worth of claims. But a seven-month period doesn't put potential litigants on any kind of notice at all that prior claims ---- We want that 30 days is enough. Okay. But I think that's actually two different issues. There is the question that needs to be decided as to if we even get there, seven months is a reasonable enough time. But there's also the question of what did the seven months give notice of? Arguably, did it give claimants notice of the fact that, wow, as of July 1, 2005, I'm going to have a two-year statute of limitations? Arguably, yes. Did it give them notice that any preexisting claims under a statute that had no statute of limitations were going to be extinguished? Respectfully, I would submit no, not at all. And I would also just note that the Wilson case did involve a significantly longer period of time, an explicit grace period of three years, which certainly is a, you know, a far cry from the seven months that we're talking about here. All right. I think your time is up, and we thank you for your argument. We will hear counsel in rebuttal. Thank you, Your Honors. Thank you, Your Honors. The concept of fairness has been brought up by both sides during the discussion today, and from a standpoint of what occurred prior to the effective date of the statute of limitations and the idea was amended versus after, I think the fairness concept is important. Basically, what they're seeking to pursue here are claims, as I said, dating back to the student's fifth grade school year. So dating back to 1997. Statute of limitations are designed to allow ample notice, proper notice, and timely notice to a party who has to defend those types of claims. And in this particular case, because of the nature of the claims at issue and the duration of the time frame sought for which the claims are being pursued, it is extremely difficult to do that. Congress recognized that by making this change. And the language of the statute itself says, shall file. And that's what occurs. Shall file is mandatory language. The seven-month window, it's our position, does constitute a reasonable period of time for notice. And from a standpoint of communicated information, our position is that the district did communicate what information was required. In other words, during the time frame at issue before July 1st, 2005, the district, to the extent it had to disseminate procedural safeguards, did so. And the student then graduated. So we're in a position, Your Honors, again, because of the way this played out time-wise, the student graduated. The change was effective after that point. And the claim was brought much later. We believe that that seven-month period was intentional. It's a reasonable notice period. Both sides are on alert, so to speak, to have notice and then to act with all deliberate speed and with due diligence. In this case, unfortunately for the plaintiff, that did not occur. They had the window. They did not pursue it during the window. And they waited an extended period of time after. I believe that some of the cases that were addressed in the reply brief do have some provisions that are important. Your Honor brought up that 1902 Supreme Court case. And that's a case where there was a contract that was issued. Then there was the statute of limitations. Then an extended period of time, many years actually, until I think it was the 1880s into 1890s, in which there was a claim. So there was ample period of time there in which the statute had existed. But we believe that this case, the facts are stronger here because of that seven-month window. And both sides were really on alert, so to speak, to be aware of the change in the law. You know, from the standpoint of the fairness concept, fairness is partly to protect the school district, the responding party. Fairness is partly to protect the other side. Did they have a reasonable opportunity? I think that's the crux of this issue. Did they have a reasonable opportunity? Your Honors brought up when Ms. Serrini was speaking the concept of the issue of action. In this case, we believe that the retroactivity analysis should not focus on alleged substantive rights that were violated, but instead, as addressed in some of the case law, an affirmative action or affirmative duty, and the issue being when did the plaintiff bring the suit. We think that's the key issue under the statute of limitations analysis. And in this case, unfortunately, as I said, the suit was brought, or the claim due process complaint was brought much later. Thank you. Thank you. Counsel, the case was well argued. We'll take it under advisement.